**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD WILLIAM MCDANIEL, | : | CIVIL ACTION NO. 1:24-CV-1237 |
| | : | |
| **Plaintiff** | : | **(Judge Neary)** |
| | : | |
| v. | : | |
| | : | |
| RURAL KING HOLDINGS, LLP | : | |
| d/b/a RURAL KING and RK | : | |
| ADMINISTRATIVE SERVICES d/b/a | : | |
| RURAL KING | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

In the United States, the principle of federalism can result in some strange circumstances. A common one is when an act is criminalized by one sovereign, but legalized by another. In this scenario, there is a tension between the limited powers of the federal government, which often give way to the powers reserved to the states, and the supremacy principle where federal law triumphs over state law. This case involves that very tension.

Plaintiff Richard McDaniel claims his former employer, defendants Rural King Holdings, LLP d/b/a Rural King and RK Administrative Services d/b/a Rural King (collectively "Rural King"), fired him in February 2024 in violation of Pennsylvania law. Specifically, he argues Rural King terminated him for his status as a user of medical marijuana and out of retaliation for filing a workers' compensation claim. He then filed this lawsuit, bringing claims under the

Pennsylvania Medical Marijuana Act ("MMA"), 35 P.S. § 10231.101 *et seq.*, as well as certain common law claims related to his termination.

In response, Rural King filed a motion for summary judgment, claiming that McDaniel's claims are preempted by the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq.* and that McDaniel's continued employment would have placed Rural King in violation of federal firearms laws which prohibit firearms dealers from allowing a prohibited person from possessing firearms and ammunition.

Reviewing the record and the parties' respective arguments, the court concludes the MMA is not an obstacle to the enforcement of the CSA, and so there is no general preemption of Pennsylvania's protections to medical marijuana users. Further, material disputes of fact prevent the court from concluding, as a matter of law, that it would be impossible for Rural King to comply with both the MMA and the CSA. Therefore, Rural King's motion for summary judgment will be denied.

## I. Factual Background & Procedural History[1]

On or around January 4, 2023, McDaniel was hired as a stocker at Rural King's Hanover, Pennsylvania location. (Doc. 20-2 ¶ 1). Rural King "is a family-

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the movant's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 20-2, 22-1). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

owned business offering a diverse range of products to support those living the rural lifestyle and has stores across the entire United States." (Id. ¶ 2). Among these products are firearms and ammunition. (Id. ¶ 3).

At Rural King's store in Hanover, firearms and ammunition are primarily handled by the Gun Barn. (Doc. 20-5 ¶ 9). Some firearms are locked behind glass, and all of them have gun locks to prevent loading and firing. (Id. ¶¶ 5-6). Meanwhile, ammunition is stocked openly on shelves and can be accessed by any customer. (Id. ¶ 7). Kathy Pugh, the firearms compliance manager for Rural King, provided an affidavit saying there are times when any Rural King employee will assist in firearms transactions—not just those specifically assigned to the Gun Barn. (Doc. 20-5 ¶¶ 1, 11). At the same time, Pugh never made any references to McDaniel's specific situation.

When McDaniel was first hired, he disclosed to his manager that he was a holder of a Pennsylvania medical marijuana card. (Doc. 20-2 ¶ 8). On May 11, 2023, McDaniel was promoted to a department specialist of the sporting goods department. (Id. ¶ 13). In this new role, his responsibilities included stocking merchandise, providing customer service, operating various equipment such as a Telxon gun and forklifts. (Id. ¶ 15). According to Pugh, department specialists work in the Gun Barn. (Doc. 20-5 ¶ 10). Yet, in a sworn declaration, McDaniel said when he was promoted, he was specifically told he would not have anything to do with the Gun Barn. (Doc. 22-2 ¶¶ 13-14). After a restructuring took place at Rural King, McDaniel's title was changed to department lead of consumables. (Doc. 20-2 ¶ 17).

3

This new position did not require direct involvement with firearms. (Id. ¶ 19). Moreover, McDaniel's maintains that throughout his employment with Rural King, it was understood that he would be kept separate from firearms and ammunition. (Doc. 22-2 ¶ 16).

In January 2024, McDaniel suffered a workplace injury. (Id. ¶ 21). Per Rural King's workplace policy, McDaniel was required to undergo a drug test before returning to his employment after his injury. (Id. ¶ 25). McDaniel was informed he tested positive for THC as a result of the drug test. (Id. ¶ 26; Doc. 22-1 ¶ 26). Rural King then terminated McDaniel's employment because of this positive drug screen. (Doc. 20-1 ¶ 33).

## II.    Legal Standards

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to

4

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case *on which that party will bear the burden of proof at trial.*'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

5

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.   Discussion

Rural King's principal argument is that, because marijuana is a controlled substance, and illegal under federal law, any protections afforded to marijuana users are preempted by the CSA.

### A. Supremacy Clause and Preemption

The Supremacy Clause of the U.S. Constitution declares that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. From this clause, "Congress may consequently pre-empt, i.e., invalidate, a state law through federal legislation." Oneok, Inc. v. Learjet, Inc., 575 U.S. 373, 376 (2015). In conducting a preemption analysis, courts are "guided by two cornerstones of [] pre-emption jurisprudence." Wyeth v. Levine, 555 U.S. 555, 565 (2009). "First, the purpose of Congress is the ultimate touchstone in every pre-emption case. Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, courts start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. (cleaned up).

Beyond these cornerstones, there are three forms of preemption: express, field, and conflict preemption. See Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992) (citations omitted). The parties, and the court, all agree that of these, only

conflict preemption is implicated in this case. (Doc. 21 at 9; Doc. 22 at 7). Conflict preemption is further divided into two types: impossibility preemption and obstacle preemption. Farina v. Nokia Inc., 625 F.3d 97, 122 (3d Cir. 2010) (quoting Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 251 (3d Cir. 2008)). The former occurs "where it is impossible for a private party to comply with both state and federal requirements," and the latter happens when a "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (quoting Fellner, 539 F.3d at 251).

With these principles in mind, the court must begin with the purpose of Congress in enacting the CSA. Fortunately, the Supreme Court explained the purposes of the CSA "were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Gonzales v. Raich, 545 U.S. 1, 12 (2005). To do that, the CSA makes it illegal to "manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." Id. at 13 (citing 21 U.S.C. §§ 841(a)(1), 844(a)). Additionally, the CSA includes an express non-preemption provision stating:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903. Therefore, Congress has directly explained that states would continue to regulate various drugs and only where there is a "positive conflict" should the state law be preempted.

7

Turning to state law, the MMA established a regulatory scheme for the lawful—in Pennsylvania—use of medical marijuana by approved individuals. 35 P.S. § 10231.101, *et seq*. The law allows patients with serious medical conditions to use medical marijuana upon approval from a qualified physician. 35 P.S. § 10231.303. Additionally, the MMA prohibits employers from taking adverse action against employees "solely on the basis of such employee's status as an individual who is certified to use medical marijuana." 35 P.S. § 10231.2103(b)(1). That being said, the employer is not required to "make any accommodation of the use of medical marijuana on the property or premises of any place of employment," id. § 10231.2103(b)(2), nor is the employer required to do anything "that would put the employer or any person acting on its behalf in violation of Federal law," id. § 10231.2103(b)(3).

Rural King admits it terminated McDaniel because he tested positive for marijuana. (Doc. 20-2 ¶ 33). There is no accusation or any evidence that McDaniel was using marijuana outside of the scope allowed by the MMA. Thus, Rural King appears to have violated Section 10231.2103(b)(1) unless that section has been rendered null by federal law. Yet, as explained below, the MMA is not an obstacle to the operation of the CSA, and there are disputes of material fact preventing the court from concluding it is impossible for Rural King to comply with both state and federal law.

### B. Obstacle Preemption

Rural King asserts that "the MMA is a direct obstacle to the enforcement of the CSA and prevents the federal government from controlling use of a Schedule I controlled substance in Pennsylvania." (Doc. 21 at 12-13). Obstacle preemption occurs where "compliance with both laws is possible" but "under the circumstances of a particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." MD Mall Assocs., LLC v. CSX Transp., Inc., 715 F.3d 479, 495-96 (3d Cir. 2013) (quoting Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000)). "The mere fact of 'tension' between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power." Id. at 495 (quoting Madeira v. Affordable Housing Found., Inc., 469 F.3d 219, 241 (2d Cir. 2006)).

Here, Rural King argues that since marijuana is a schedule I drug,[2] it has no medical benefits and so any law which allows for its use is an obstacle to Congress's intent. (Doc. 21 at 11-12). Not so. First, it is important to note "no legislation pursues its purposes at all costs." CTS Corp. v. Waldburger, 573 U.S. 1, 12 (2014) (quoting Rodriguez v. United States, 480 U.S. 522, 525–526) (1987) (per curiam)).

---

[2] When Rural King terminated McDaniel's employment and during briefing for this matter, all marijuana was a schedule I controlled substance. The court acknowledges that on April 28, 2026, the Department of Justice reclassified medical marijuana as a schedule III controlled substance. Schedules of Controlled Substances, 91 FED. REG. 22714, 22714-15 (April 28, 2026). In this opinion, the court will consider medical marijuana to have the status of a schedule I controlled substance as it was during the events giving rise to this case.

While Congress undoubtedly wanted to curtail drug abuse and regulate controlled substances, it explicitly did not intend to "occupy the field" of this subject area. See 21 U.S.C. § 903.

Moreover, there is a significant distinction between the CSA and the type of action being brought by McDaniel. The CSA targets individuals who use, possess, and distribute controlled substances contrary to law. 21 U.S.C. 841(a). Nothing about the MMA's employer protection provision contravenes that purpose, nor does the MMA purport to exempt individuals or businesses from federal criminal liability when dealing with marijuana. Conversely, the basis of the claim in this case is employment discrimination. It is conceivable Congress wished to vest prosecutors, who are public officials subject to the control of the President, to exercise discretion in choosing which cases to bring, but not to encourage all private actors to take their own actions against drug users. See Noffsinger v. SSC Niantic Operating Co. LLC, 273 F. Supp. 3d 326, 334-36 (D. Conn. 2017) (noting the CSA lacked any provision relating to employment of drug users and finding it did not preempt state-law protections for medical marijuana users).

The court also agrees with the decisions of the high courts of Oklahoma, Arizona, and Michigan, which found that their laws legalizing marijuana to various extents did not create impermissible obstacles to the enforcement of the CSA. In re State Question No. 807, Initiative Petition No. 423, 468 P.3d 383, 393 as corrected (Ok. June 25, 2020); Reed-Kaliher v. Hoggatt, 347 P.3d 136, 141-42 (Ariz. 2015); Ter Beek v. City of Wyoming, 846 N.W.2d 531, 539-41 (Mich. 2014).

In opposition, Rural King relies primarily on three cases: Cocroft v. Graham, 122 F.4th 176 (5th Cir. 2024), cert. denied, 145 S. Ct. 2682 (2025), Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley, 71 F. Supp. 3d 715 (E.D. Mich. 2014), and Emerald Steel Fabricators, Inc. v. Bureau of Lab. & Indus., 230 P.3d 518 (Or. 2010). (Doc. 21 at 9-10; Doc. 23 at 5-6). None of these cases are convincing.

First, Cocroft involved a First Amendment challenge from a marijuana dispensary. 122 F.4th at 177-78. The Fifth Circuit held that because the CSA makes the possession and distribution of marijuana illegal across the country, the sale of marijuana was not a lawful activity for the purposes of the Central Hudson test. Id. at 184. Here, no party is questioning whether the distribution of marijuana is fully legal in Pennsylvania. Nor do the employee protections provisions of the MMA facially force employers to violate federal law. As such, Cocroft is immaterial to the present dispute, which turns on whether a state can offer employment protections for users of marijuana.

Forest City is likewise distinguishable. While that court did find the CSA preempted a state marijuana law, it did so in the context of noting marijuana remains illegal under federal law. See Forest City, 71 F.Supp.3d at 727 ("[I]t is impossible for someone to ingest marijuana, 'medical' or otherwise, without violating the CSA."). Again, no party disputes that Pennsylvania cannot make marijuana fully legal in the commonwealth; all medical marijuana users and dispensaries could be prosecuted at any time by the United States. The rest of

Forest City dealt with whether marijuana use could be an accommodation under other federal laws, which is not the issue before this court. Id. at 727-31.

The final case, Emerald City, does bear on this dispute and warrants lengthier discussion. There, the Oregon Supreme Court held the CSA preempted the part of the state's medical marijuana law authorizing the use of the drug, and so an employer could not be forced to accommodate an employee's lawful (under state law) marijuana usage. Emerald City, 230 P.3d at 536. The court reasoned that affirmatively allowing marijuana usage, when federal law provides a blanket prohibition, serves as an impermissible obstacle and so the state law must be preempted. Id. at 528-29.

Yet the cases relied on by the Emerald City court do not quite support its holding. The two key cases relied on in that case were Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25 (1996) and Michigan Canners & Freezers Association v. Agricultural Marketing and Bargaining Bd., 467 U.S. 461 (1984). Emerald City, 230 P.3d at 528-29. In Barnett, the Supreme Court addressed a state law that prohibited banks from selling insurance despite a federal law authoring banks to do just that. 517 U.S. at 28-29. While this was not impossibility preemption, because a bank could simply not sell insurance, the Court held that states could not limit the powers granted to banks by Congress. Id. at 34-35. In the context of the CSA, Congress has not granted private entities any power that is being curtailed by state employment law. Nothing in the CSA addresses actions a *private* entity may take against an unlawful user of drugs; it only allows the federal

12

government to bring criminal charges against that user. So, <u>Barnett</u> is dissimilar to the current context.

The story is similar with <u>Michigan Canners</u>. That case involved the interplay between Michigan's Agricultural Marketing and Bargaining Act (the "Michigan Act") and the federal Agricultural Fair Practices Act ("AFPA"). The AFPA prohibits "either a processor or a producers' association to engage in practices that interfere with a producer's freedom to choose whether to bring his products to market himself or to sell them through a producers' cooperative association." <u>Mich. Canners</u>, 467 U.S. at 464 (citing 7 U.S.C. § 2303). On the other hand, the Michigan Act provided that, "under certain circumstances, a producers' association could receive state accreditation to become the exclusive bargaining agent for all producers of a given commodity; when an association was so accredited, 'all producers of that commodity, regardless of whether they have chosen to become members of the association, must pay a service fee to the association and must abide by the terms of the contracts the association negotiates with processors.'" <u>Ter Beek</u>, 846 N.W.2d at 540 (quoting <u>Mich. Canners</u>, 467 U.S. at 467-68).

Thus, <u>Michigan Canners</u> involved a very similar situation to <u>Barnett</u>. Federal law granted a privilege; this time, it was the power for an individual agricultural producer to choose whether to associate with a producer association. State law, however, infringed upon this privilege. Again, it did not involve impossibility preemption because a producer could simply not bring goods to market, but it was still obstacle preemption because a state law was interfering with a privilege

13

granted by Congress. As explained above, that dynamic is not at play with the CSA and medical marijuana statutes. So while Emerald City does involve similar facts, the court is unpersuaded and finds obstacle preemption is not implicated in this case.

Finally, it is worth noting the "case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them." Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 166-67 (1989) (cleaned up). Since 2015, Congress has prohibited the Department of Justice from using any funds to prevent states and territories from "implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Joanna R. Lampe, *et al.*, The Federal Status of Marijuana and the Policy Gap with States (2026), https://www.congress.gov/crs-product/IF12270 [https://perma.cc/ED4U-XWKU]. Therefore, there is strong evidence Congress has chosen to grant states leeway in crafting individualized medical marijuana policies, and because the intent of Congress is the touchstone for preemption analysis, the court finds the MMA does not pose an obstacle to the CSA.

### C. Impossibility Preemption

Failing obstacle preemption, Rural King takes two approaches to invoke impossibility preemption. First, it broadly contends that "it is impossible for an employee of Rural King to ingest marijuana, "medical" or otherwise, without

14

violating the CSA as Congress deems marijuana to have no medically acceptable uses." (Doc. 21 at 9). There are two main issues with this argument.

To begin, it is not impossible for a private individual to comply with both the CSA and the MMA. A person can simply abstain from using medical marijuana in Pennsylvania. Nothing in the MMA requires someone to use marijuana and so, this argument can be set aside.

Second, even if there is a tension between a person's use of marijuana under the MMA despite the CSA's prohibition, that tension exists for an *individual*, not a company. The Supreme Court has instructed that "[i]n a pre-emption case . . . 'a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it.'" Dalton v. Little Rock Family Planning Servs., 516 U.S. 474, 476 (1996) (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 502 (1985)). In essence, Rural King urges the court to hold that the CSA preempts the entire MMA. However, in doing so it enlarges the true, limited issue in this case— whether Rural King violated only a particular provision of the MMA, specifically, § 10231.2103(b)(1). For Rural King to invoke impossibility preemption, it must demonstrate how the MMA requires it to do something prohibited by federal law.

Its other approach to invoking impossibility preemption follows this track. Rural King argues that if it were forced to employ McDaniel, it would be violating 18 U.S.C. § 922(g)(3). That law prohibits anyone who is a user of, or addicted to, a controlled substance from shipping, transporting, or possessing a firearm. Id. Similar to the point addressed above, to the extent this law does pose a problem, it

is a problem for McDaniel, not Rural King. The company never explains how it could face liability under Section 922(g)(3) by employing McDaniel. The closest it comes is by asserting it could lose its federal firearms license. (Doc. 23 at 6). Again, Rural King faces two issues. The first is that it only raised this argument in its reply brief. See Clermont v. Nat'l Tenant Network, Inc., No. CV 23-03545, 2024 WL 4805004, at *3 n.5 (D.N.J. Oct. 3, 2024) (stating the rule that arguments not raised in an opening brief are forfeited).

Even setting possible forfeiture aside, contrary to Rural King's assertions, there is a material dispute over whether McDaniel would have had possession over any firearms in the course of his employment. For example, in a sworn declaration, McDaniel says he never "ha[d] anything to do with firearms and ammunition in the Gun Barn," he never "had keys to access locked firearms or ammunition in inventory," and he "had no more access to firearms and ammunition than any person who walked into the store off the street." (Doc. 22-2 ¶¶ 15-18). This is sufficient to create a material dispute over whether McDaniel would have possession of any firearms in his employment with Rural King.

Rural King tries to argue that because certain ammunition was stored in a back room to which McDaniel had access as an employee, he therefore had constructive possession of the ammunition. (Doc. 33 at 4-5). The court finds this possibility, standing alone, is too remote to establish that McDaniel could be found to be in possession of firearms. As McDaniel correctly notes, "[d]ominion and control are not established, however, by 'mere proximity to the [firearm], or mere presence

16

on the property where it is located or mere association with the person who does control the [firearm] or the property.'" (Doc. 36 at 8-9) (quoting United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996). It is up to a factfinder to determine whether, in the course of his employment, McDaniel would come into possession of any firearms. Without that fact, Rural King cannot show that following the MMA would cause it to violate federal law.

### D. McDaniel's Common Law Wrongful Termination Claims

Finally, Rural King asserts that summary judgment is appropriate for McDaniel's common law wrongful discharge claims. (Doc. 21 at 18). In Pennsylvania, the general rule is that "an employer 'may discharge an employee with or without cause, at pleasure, unless restrained by some contract.'" Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998). Nonetheless, "[t]he employer's privilege to dismiss an employee with or without cause is not absolute, however, and may be qualified by the dictates of public policy." Id.

To that end, it is against the state's public policy to terminate an at-will employee for filing a workers' compensation claim, and a cause of action exists for wrongful discharge. Id. at 1237-38. Further, the Pennsylvania Superior Court has recognized that the MMA "reflects a public policy designed to protect certified users of medical marijuana from employment discrimination and termination." Palmiter v. Commonwealth Health Sys., Inc., 260 A.3d 967, 977 (Pa. Super Ct. 2021). This means individuals can maintain suits for wrongful termination when such termination is alleged to have been contrary to the MMA. Id. Because the court

17

finds the MMA is not preempted on the record currently before it, Rural King's request for summary judgment on McDaniel's wrongful termination claims will also be denied.

## IV.   Conclusion

Pennsylvania, like many states, is pursuing a different path than the federal government with respect to marijuana. Nothing in the CSA categorially preempts this choice as reflected in the MMA. Further, there are material disputes of fact that preclude the court from determining impossibility preemption is at play in this case. Therefore, Rural King's motion for summary judgment will be denied. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:     May 13th, 2026

18